## RUSCA et al. v. BOULET.

### No. 4004.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

S. R. Thomas, of Natchitoches, for appellant.

James W. Jones, of Natchitoches, for appellees.

CULPEPPER, Judge.

This is an action to recover damages in the sum of $1,512.34, with legal interest from May 1, 1929, as the value, in its manufactured state, of timber cut and removed, in alleged bad faith, by defendant from the land of plaintiffs, situated in the parish of Natchitoches.

There was judgment for plaintiffs in the sum of $400, with 5 per cent. per annum interest thereon from May 1, 1929, until paid. Both parties obtained orders of appeal. That taken by defendant alone has been perfected and lodged in this court. Plaintiffs have answered defendant's appeal, asking that the judgment be amended by increasing the amount of the award so as to cover the full amount sued for.

Defendant having made no appearance before this court, either in person, through counsel, or brief filed, we assume that he has abandoned the appeal.

On May 17, 1917, defendant sold and deeded to plaintiffs J. D. Rusca and N. T. Smith, the tract of land from which the timber herein involved was cut, the tract sold and conveyed being described in the deed as the lower half of a certain tract then belonging to defendant and containing about 240 acres, situated in Natchitoches parish. The consideration as recited in the deed was $500 cash and other valuable considerations. The evidence shows that the real consideration was legal services rendered to defendant by J. D. Rusca, one of the plaintiffs, an attorney at law, and his then law partner, N. T. Smith, the husband of Mrs. Verona Smith and father of Donald Smith, Mrs. N. G. Smith, Lake, Norwood, and Preston Smith and Mrs. Sadie Smith Flowers, who are the other plaintiffs herein; the said N. T. Smith having died subsequent to the execution of said deed.

The testimony further shows that the deed above mentioned became misplaced before it was placed of record, and that on the 14th of February, 1918, J. D. Rusca and said N. T. Smith, under the firm name of Smith & Rusca, secured another deed of like tenor for the same land from defendant, which latter

deed was on March 5, 1918, duly placed of record. Both of these deeds are filed in evidence and relied on by plaintiffs as muniment of title claimed by them of the land and the timber in question, the first deed having been found shortly after the death of N. T. Smith, which occurred in May, 1919, and was placed of record July 5, 1930.

Defendant denies signing the second deed. His signature thereto appears by mark, which he alleged in his answer was a forgery. His defense to the first deed is that Smith & Rusca failed to perform the legal services which they had agreed to perform for him for which he deeded the property to them; that therefore the consideration for the sale failed. The testimony on these two defenses failed to support defendant's contentions, and it appears certain that plaintiff's title to the property, and their undisputed ownership of the timber at the time it was cut and removed, has been well established beyond any controversy.

Plaintiffs alleged that defendant cut and removed the timber in bad faith and demand its value in its manufactured state, which it is alleged amounts to $1,212.34 for the pine timber cut, and $300 for the oak, aggregating $1,512.34.

■ Defendant, as an alternative plea, averred that he acted in good faith in cutting the timber. In view of the fact that defendant had executed two deeds to plaintiffs, and the further facts, as disclosed by the record in this case, that he did not have the land in question assessed to him after executing the deeds, and the further fact that it is shown that he executed a mortgage on May 31, 1917, on the remaining or upper half of the original tract, specifically referring to the tract mortgaged as bounded above by the lower half "owned by N. T. Smith and J. D. Rusca," he cannot be considered as believing that he still owned said upper half which he had sold.

Mr. Rusca, one of the plaintiffs, testified that when he learned of the timber being cut, he had defendant to call at his office, and asked him why he had cut the timber, and defendant replied: "I am sorry I did it, and I don't know why I did it, but I got plenty of timber left on my land and I can pay you back in kind."

This testimony was not contradicted by defendant. Asked if he cut the timber, defendant answered, "I had it cut."

■ Defendant, we conclude, was in moral bad faith in cutting and removing the timber, and under the settled jurisprudence of this state he must pay damages measured by the value of same in its manufactured state without deducting the manufacturing costs. Allen v. Frank James Co., 142 La. 1056, 78 So. 115; Nona Mills Co. v. W. W. Gary Lumber Co. (La. App.) 127 So. 425.

It is shown by the testimony that the timber which was cut was of a good grade.

Mr. V. G. Hyams, an expert timber estimater, testified that he went upon the land, counted the logs, measured them, and made a list, which is filed in evidence. He states that the list correctly shows what timber was found to be cut from plaintiffs' tract of land. It shows the number of trees and their different lengths, also dimensions, using a standard steel wire measure.

J. I. Winn, a man of twenty years' experience in buying and selling timber of various kinds, testifying from the list made by Hyams, estimated the amount of staves which could have been made from the white oak therein shown at 1,000 to 1,200, at an average value of 40 cents per stave in the manufactured state.

A. J. Rains, another timber buyer, placed the value on the staves at 37 cents—present market value (1930). He could not say what the value was in 1929, the year they were cut.

John Burton, testifying for defendant, stated he cut the timber for defendant. He estimated that he cut 600 staves from plaintiffs' tract; that he sold them for 22 cents each, f.o.b. cars. He states that he cut about 1,000 stave bolts, which he sold at 22 cents each. It is not clear from his testimony whether the staves and stave bolts were one and the same thing. His testimony is not clear as to the number of piling he cut from plaintiffs' land, nor what he got for them.

Reverting to the estimate made by Mr. Hyams, it shows 20 white oak trees cut from plaintiffs' land, valued at $15 each, manufactured into staves. This would come to $300, which sum we shall adopt as basis for the oak.

This Hyams estimate places the number of pine piling trees at 150. The prices per lineal foot placed thereon are 18, 19, and 20 cents, the smallest size at 18, the medium at 19, and the largest at 20. The values placed in column No. 4 opposite each respective separate number of piling, based on the manufactured price, aggregate, when added, the total sum of $1,217.

Mr. Winn, who testified on the witness stand that he secured for Mr. Rusca these prices as of date the timber was cut, January, February, March, and April, 1929. But on being questioned as to the correctness of these prices, he could not say definitely that they were correct. Asked by the court what the prices were, he said: "We were paying at that time 12 to 18 cents per lineal foot." He states, however, later, that the price increases with the length of the tree, up to as high as 20 cents per foot for a tree 50 to 62 feet. We shall give to defendant the benefit of a low average and put it at 15 cents. The 150 trees, under their given lengths, come to a total of

6,322 lineal feet. At 15 cents it will make $948.30, according to our calculation.

For the reasons assigned. the judgment of the lower court is amended by increasing the amount awarded from $400 to $1,248.30, with legal interest thereon from May 1, 1929, until paid, and as thus amended. the judgment is affirmed. Defendant to pay costs of both courts.